Good morning, Your Honors. Mark Vanderhout appearing on behalf of Petitioners along with Stacey Tolchin from my office, and Petitioners are present in court today with their U.S. citizen children. Petitioner raises three main claims in their petition. First, that substantive due process requires a hearing that takes into account the separation of the family before removal can occur. Second, that international law requires the same. And third, that the BIA abused its discretion and violated Petitioner's due process rights in issuing a decision that purported to be an affirmance without opinion, designating the IJ's decision as the final decision of the agency, but yet changing that decision and changing the period of voluntary departure from 60 days to 30 days. I'll primarily address that third issue because we believe that the board's violation requires remand and then the court can avoid, as it should, if possible, the constitutional issues we present in the claim. The government doesn't contest that it was a violation of the regulation. There's no question about it. The violation of what? Of the affirmance without opinion regulation. That regulation. Yes, Your Honor. Well, let me ask you about that from the standpoint. Are you suggesting that if the BIA is required by its own precedent to reduce the IJ's grant of voluntary departure from 60 to 30 days, that the streamlining procedure precludes the BIA from summary affirmance of the IJ's? That's correct, Your Honor. They have to choose because under the affirmance without opinion or the court decisions, it's the IJ decision that gets reviewed here. And it's the IJ decision that's the final agency decision. But here they've tried to have it sort of two parts of two decisions. They want everything but the voluntary departure part of the IJ's decision to be the final agency decision. But they want the board's voluntary departure decision. And they can't do that. They can't have it both ways. Well, what's the evidence that they suffered prejudice from the standpoint that it appears to me that it's not a question of whether they overstayed by 30 or 60 days. It's been years. Well, it hasn't, Your Honor. I'll explain why. First of all, we don't believe that they have to show prejudice because if they abuse the discretion, then there's no prejudice required. The Itura Barria decision of this court and several others we cited in our brief say that. If you do go beyond that to reach a due process, then there has to be prejudice shown. But an abuse of discretion there doesn't. As to the abuse of discretion if you do reach a due process issue, there has been prejudice here because the issue isn't how much time has elapsed during the pendency of the appeal. The issue is if they lose at the very end, how much time do the petitioners have to deal with their children here to make arrangements for them, etc. And the immigration judge said they have 60 days. They haven't. What happens is when the court finally decides is if the court were to reject everything else and they do have to leave the United States, then they have to get their affairs in order. They have to arrange for care of their children, etc. And the immigration judge said, well, they have 60 days to do that. The board just arbitrarily changed that to 30 days and it didn't even explain why it was doing that. Let me interject here because I think I can cut to the chase. You're arguing based on the assumption that the voluntary departure period was preserved, however long it might have been, it was preserved during the pendency of the appeal under our earlier opinion, Contreras-Aragon. Well, that's true, Your Honor, but let me just first... ...assuming they lose on the merits to a voluntary departure period, the only issue is whether it's 30 days or 60 days. And the fact that the IJ granted the voluntary departure period a long time ago and that both 30 days and 60 days have expired since then is neither here nor there because they're entitled to it, given that they appealed to here and that the whole thing was stayed. That's absolutely correct, Your Honor, but let me also add one point. It doesn't really matter if this is the issue that they changed the decision on involved voluntary departure. Let's say it was an asylum case and let's say the IJ denied asylum saying no well-founded fear and that was it. The board AWOed but added in and saying, in addition, we think this was a frivolous claim and therefore you're barred for life. They AWOed but they added that one sentence. That changes everything. That decision is improper under AWO and it's a violation of the regulation of abuse of discretion. There has to be a remand to the I'm sorry, under Chenery because this court can't guess what decision should the court use. Should it use the IJ's decision? Should it use the Board of Immigration Appeals decision? It can't guess as to which one under Chenery. So it has to remand and if it was an asylum case and they added that frivolous claim, like I said, it would be the same issue. So voluntary departure really isn't the issue here. The issue here is the board issued two decisions or the agency did and we don't know which one to apply. But I do want to address the Contreras-Aragon issue for one moment. If the court does reach that, if it rejects their first argument, there has to be remand under Chenery to clarify what decision is going on here. Then under Contreras-Aragon, yes. That needs to be in effect and we believe the court should, if it rejects their first argument and doesn't remand because of the AWO impropriety here, then we believe that it should use this case to establish under child post-Contreras-Aragon. Does this UZWETA rule apply? And we think the court, as we cited in our brief in page 21 of our reply brief, the George versus Camacho case, the en banc decision of this court, which analyzed the case of whether or not the extra seven days for Mariana Island appeals applied in the federal courts. The court said we will no longer apply that period of time, but we're not going to apply that retroactively. We have to apply that retroactively only because we're changing the rules midstream. It was this court in the en banc decision said we can't sort of say I got you. Yeah, you filed under one rule and now too bad we're changing the rule. That would be true here under Contreras-Aragon. Here petitioners filed under Contreras-Aragon. They expected to have 30 days. They didn't ask for a stay. They didn't have to because it was an automatic stay. And then a year later or so, the court changed its rules. We think that if the court is going not to amend here and going to go forward, then it should announce the rule in this case and say four cases where the petition for review was filed post-Zazueta, Zazueta applies, for ones that were filed pre-Zazueta, as was this case, that only Contreras-Aragon applies. And I'd like to ask you one last question before. All this is we're fighting around the edges, of course. I mean, there's substantive claim we haven't even gotten to. But correct Your Honor. If we agree with you that the BIA did not have the power under streamlining to reduce the voluntary departure period from 60 to 30 days, I want to make sure I understand you. You don't want just a preservation of the 60 days. You want a remand to the BIA so that they can, if they really want to reduce it, they've got to say so? Well, we think the agency, the court would have to be saying, well, we're going to either, you know, ignore the board decision and take the IGA decision or we're going to take the board decision but we're not going to allow it to do that. We think it should remand and then the board can decide what it's going to do. We think that's probably proper. If the court disagrees, then it should. Obviously, we believe the court should rule on the merits of our substantive due process international law claims. I haven't, we think our briefs state that fully, so that's why I've reserved the issue here. I'm sorry, I've reserved my time for argument on this voluntary departure and AWO issue because I think it's a little more complicated. Okay. Now, on customary international law, you're making serious arguments under customary international law. My problem with them is we've got a statute that appears to be inconsistent with customary international law. If that's so, how can we possibly follow customary international law when we have a statute that seems to me clearly to the contrary? Well, our point, Your Honor, is that the statute would have to be more clear than it is and that the court can take international law principles and apply that to the statute when the statute doesn't specifically address the precise issue of whether a hearing is required in these circumstances. We think it does. It has to be more precise in order to not apply international law principles at all. The statute is crystal clear in saying, you know, here are the requirements before you can get a hardship determination. The requirement now is, it used to be seven, it's now ten. I mean, what's unclear about that? That's correct, Your Honor, but it doesn't talk about the international law principles and we believe it has to. That's the position that we believe, Your Honor. So I'd like to save my one minute. You've got about a minute for rebuttal. Thank you very much. May it please the court, my name is Ernesto Molina with the U.S. Department of Justice's Office of Immigration Litigation and I represent the respondent, Alberto Gonzalez, in this case. Now, in this case, the court confronts aliens who raise entirely new claims before this court, claims that were not presented before the Board of Immigration Appeals. And could not have been because the board does not empower to hear constitutional claims of this sort. Well, your part, with respect to the part you've just said, Your Honor, you are correct. However, there are also international law claims and the board is fully empowered to decide, to look at international law and analyze that in terms of domestic law. In fact, the Supreme Court has emphasized for about 125 years now that the executive is entitled to particularize deference because the executive needs to be able to consider international affairs, foreign relations, et cetera. It would be incongruous to say that the executive is entitled to deference because of international law implications and say the executive can't look at international law. The board has repeatedly looked at international law, such as in matter of D.J., matter of J.E., in looking and interpreting domestic law. Now, a lot of that falls to the wayside because, as the court has suggested, Congress has been pretty explicit and that would seem to trump the need to look to international law. But even in that respect, there's still a failure to exhaust administrative remedies with regard to that claim. Therefore, this should not be heard. Now, similarly, there was also a failure to exhaust regarding voluntary departure. Now, in this case, as was brought up by the court earlier, there is board precedent that says when a grant of voluntary departure is made by an immigration judge. And the board as a general procedural rule will, you know, short of reversing that, affirm it, but reduce that amount to 30 days because of considerations of prolonged stays in the United States on appeal. In other words, the board explained in matter of Tulliaris that when an I.J. grants granted extension, sometimes those voluntary departures were quite long periods because they had very particular reasons. When a case went up on appeal, the board that a greater period would have passed and the need for that long period would be gone. So the board established in matter of Tulliaris a regulatory-like rule establishing that a grant of voluntary departure will be made 30 days after the board has issued its final order in the case. Now, there's no doubt in this case that that is what the board did. Its language is pretty stock, it's pretty standard, and it's in this streamlined board decision. It just doesn't refer to in the matter of Tulliaris or whatever. That's really it, Your Honor. But I'd point out that under this court's precedent in no versus INS, there's a presumption of regularity in the execution of duties. But if it's going to do that, it can't do it by streamlining. That's the problem. The board has complete power to reduce it. It just can't do it by streamlining. That's the issue. That's the next step, Your Honor. I just want to make sure that I took care of that. And now we'll come back to exactly what the court has brought. The question here is whether the board has violated a regulation. Now, it bears mentioning that the board's interpretation of regulations is entitled to considerable deference. In fact, any reasonable interpretation in light of the board's multifarious responsibilities need, multifarious, anyway, multiple responsibilities, it becomes controlling, so long as it's not contrary to this precise language of the regulation. Now, this regulation- And you're arguing that under the regulations, the board has the power through streamlining to change the IJ's decision? The board has the power to state that it will not use its considerable authority to provide further explanation. Well, then how should an alien challenge a summary of affirmance by the BI that reduces the IJ's grant of voluntary departure from 60 to 30 days? Well, in cases where matter truly ours was still in play, Your Honor, the argument would be when you go to the Board of Immigration Appeals, you should raise the issue that you seek to challenge matter truly ours. In this case, there was no such challenge. Now- Well, he doesn't have to challenge a decision that's favorable to him. What does he want the board to do? To reverse the IJ decision? Well, not to reverse, but change it, Your Honor. Certainly- Change it in what way? What kind of change does he want? Well, much like- From 30 to 60 days, Your Honor. Just as the board- He already has 60 days. He already had 60 days, Your Honor. So what does he want to get changed? Well, what he wants changed is this, Your Honor. When the immigration judge granted voluntary departure- 60 days. The immigration judge gave 60 days. On a matter truly ours, there's no dispute that when the board affirms the immigration judge's decision, it will reduce that to 30 days. There's no dispute about that. There's no dispute. Maybe it can do it, but it doesn't have to. And if it wants to do it, Judge Fletcher says it can't do it by streamlining because streamlining limits what it can do in affirming a decision without opinion of the IJ, right? Well, that sort of begs the question, Your Honor, is the board is required to follow its own rules and procedures. There's no doubt about that. One of those being a matter truly ours. It did exactly that. If the petitioners did not like a matter truly ours- No, it's not a matter of the board following its own rules. It's the board saying the IJ made a mistake. No, no. That's actually incorrect, Your Honor. The board, in reducing the period from 60 to 30 days, makes no suggestion that there was an error in the case. It is simply following its procedures that, yes, there was a grant of voluntary departure, and more expanded period has passed, more than the 60 days that was granted. The board will continue voluntary departure for another 30 days after its decision. It's not saying the immigration judge is wrong, and perhaps that's what might be misleading the court. It's affirming the immigration judge, simply saying that as a matter of the board's procedures, as happens in every case before a matter of AAM was decided, the period would be made an additional 30 days after the board's final decision in the case. There's no reversal of the immigration judge. There's no amending of the immigration judge. It's just a continuation of the proceedings under the rules established by the board. Well, now, but I guess in terms of the, just so that I understand this, that apparently the petitioners were here today, and I understand that from what counsel said when he started, that was there a stay pending this matter? No, Your Honor. There was no stay requested before the immigration judge, stay of voluntary departure, or stay of deportation for that matter. And there's been no stay of voluntary departure in this case before the court. Now, with regard to, I do need to address the issue brought up by counsel regarding Contreras-Aragon. Now, counsel would suggest that he relied on, that his clients have relied on Contreras-Aragon in filing a petition for review and in not departing. But we see that that's partly not true because they filed a motion to reopen with the board well after 30 days had run. But why is that relevant? That is to say, at the time they appealed to us, the governing law is Contreras-Aragon, correct? Not quite, Your Honor. You see, Contreras-Aragon applied under transition rule cases or old rule cases that were commenced before 1997. This court had never expressly applied that in a removal proceeding. And in fact, when this court looked to that issue in Zazueto Carrillo, this court decided that in removal proceedings, the law has changed. Now, the rule did not depend on this court announcing it. The rule was generated by the statute. In fact, that's what Contreras-Aragon was about. Contreras-Aragon said under the old statutory procedures, it would be inconsistent to say that an alien had to choose between judicial review or facing the consequences of failure to voluntary depart. Therefore, under the statutory regime, the court reached Contreras-Aragon. That statutory regime changed in 1997. Therefore, the petitioners were on notice of that change. With that change came Zazueto Carrillo that did not make law. It simply stated what the law is for removal cases. This is such a removal case. The aliens were on such notice of a change in the regulations. The fact that they relied on a misconstruction of a statute merely means that they made an error in judgment, a tactical error in judgment. The rules changed after 1997. This case commenced after 1997. There is no such proper reliance where the law had changed. Now, I see that I'm running out of time, and I'll begin to summarize unless there are any points the court would like me to clarify. If not, the government would urge that the board has appropriately executed its duty. It issued a summary affirmance of the immigration judge's decision and issued an additional procedural order executing its decision in matter of culiaris. There's no doubt that that was the board's purpose. There was no doubt that among the multiplicity of the board's duties, that's a reasonable interpretation of the streamlining regulation since voluntary departure cases are some of the most frequent types of cases, and that was the intent of streamlining, to provide that in the most common type of case, the board can decide whether or not to execute its extraordinary power to provide a further decision or simply employ its proceedings to expedite the case along. With that, I thank the court for its time. Thank you. A couple of brief points, Your Honor. First of all, we couldn't have appealed, the petitioners couldn't have appealed the voluntary departure issue to the board. They got what they wanted. They got the maximum 60 days, and it wasn't until the board changed its decision that there was an issue here, so there was no failure to exhaust. Matter of AM, which is the board's decision subsequent to Ira interpreted that, said they do need to give the 60 days, and so we just talked about this interim period here. What's their status in being here right now? I'm understanding the government to say that they — They didn't have a stay. Our position, Your Honor, is that under Contreras-Aragon, their voluntary departure period was told. They filed that at the time under the law that was in effect at the time. Their voluntary departure period was told, and it would be reinstated, 30 days would be instated at the end. So they're here under a total period of voluntary departure under Contreras-Aragon. We think that the court — So we have to buy that argument in order to accept that they have the stay to be here right now, correct? No, Your Honor. You wouldn't have to because even if you didn't, there would be a remand to the agency because the AWO decision was improper. You don't have a decision that you can apply here. The AWO plus it's got to change decision, and under the regulation it says it shall not include any further order or explanation. So it violated the regulation, and it has to be remanded for that. But we do believe, Your Honor, that the court should announce a rule here, no matter which way it goes on the other issue, announce a rule here in this case that when someone filed under Contreras-Aragon, that they have the right to rely on that and go forward like the court, the en banc court did in Camacho v. George, and we would encourage. I hesitate to extend your time, but I have two questions. One of them is the Contreras-Aragon question, and that is the argument is that there was no right to rely on Contreras-Aragon because the statute has changed. Well. And therefore, no reliance is proper. Well, we don't believe that's. What's the cost of that? We don't believe that's correct, Your Honor. First, two responses. One, in Camacho v. George, the en banc decision said, look, we got it wrong. We misapplied the statute. The statute was very clear. You only have 30 days to appeal. You don't have the extra seven days. The statute was clear. We misled you, but because we misled you, we're not going to penalize you. That would be unfair to do. Never has the court done that, and that would be the same in this case. The court announced a rule. It wasn't based on the language of the statute at the time. The Contreras-Aragon rule was a rule that just said, okay, here's the rule we're going to apply. It's not fair to make people choose between voluntary departure and an appeal, so we're going to say if you have voluntary. The problem is not that they didn't. They had to choose. Under the new procedure, they simply had to apply for the stay. But that was not clear, Your Honor, until that was announced in Sosueta. And even in Sosueta, this court remanded it to the Board of Immigration Appeals because of the reliance. If the court looks at Sosueta, it said it would be unfair to apply this here. Okay. Second question. Okay. And that is, it's the ‑‑ I'm finding myself oddly sympathetic to the government's argument under a matter of ‑‑ I'm having trouble pronouncing it. Chulliaris. Chulliaris. What we have is almost an administrative rule that says, listen, you've got 60 days coming out of the IJ. Or if you have more than 30 days coming out of the IJ, well, that's fine. And if you don't want to appeal, you have whatever time the IJ gave you. On the other hand, if you appeal, we're not going to take away from you the period of voluntary departure, but we're going to automatically reduce it to 30 days. So they're not interfering with the merits of this at all. They're simply applying an administrative rule. That makes the argument as to why this is permissible in streamlining. But it's not, Your Honor, because as Your Honor said, they could have done that, but then they couldn't streamline. They would have had to issue a non‑streamlined decision and reach the merits of the decision, affirm the IJ, adopt the decision if it wanted to, but it can't AWO. Because if they're AWO, you can't have the IJ decisions. Let me ask you this. Is it consistent with the administrative regulations that now exist to issue an additional sort of clarifying regulation that says, in the event that the IJ grants more than 60 days voluntary departure, the BIA will automatically reduce that to 30 days administrative voluntary departure, and so long as it doesn't get at the merits of the underlying case, this will not be considered inconsistent with streamlining. I mean, your argument is that retrochilearis is inconsistent with streamlining. Well, they could change, yes. They could promulgate a new regulation that doesn't say no further order explanation is allowed. They could promulgate that. They could change this regulation and say we can adopt or affirm without opinion everything, and we can automatically say when we do that, if there was more than 30 days voluntary departure, it will be 30 days. They can do that by regulation, but they'd have to change the regulation, notice of comment, et cetera. Here it doesn't. They didn't do that. Thank you very much. I'm sorry to hold you over. That's okay. Thank you. Thank both sides for their helpful argument. Padilla v. Gonzalez is now submitted.
judges: Tashima, W.fletcher, Callahan